### JOHN S. ROUSH *et al.*

*v.*

### FRANK WASHBURN.

1. FORMER RECOVERY—*in replevin, how far conclusive.* In replevin, where issues are joined on the pleas, *non cepit, non detinet,* property in defendant, and that he was entitled to the possession, and judgment is rendered upon a verdict finding the issues for the plaintiff, it at least establishes the claim of the plaintiff, and his right to the possession at the time the suit was brought.

2. TROVER—*what is a conversion.* Where the owner of goods delivered possession of the same to a creditor to be sold, and the proceeds applied in discharging an execution, then a lien on the same, and in paying the creditor's debt, and what was left to be returned, and the creditor puts his agent in the store to sell, and afterwards the debtor shut out the agent and refused to let him proceed in selling, and the creditor thereupon replevied the goods, and they were delivered to him at his place of residence in a different place, when he sold part of them in his store, and had the rest sold at auction, there being no sacrifice on them, it was *held,* there was no wrongful conversion of the goods by the creditor, and that he, in view of the conduct of the debtor, was warranted in removing and selling the goods at a different place from that contemplated by the parties.

APPEAL from the Circuit Court of McLean county.

This was an action of trover, by Washburn, against Roush & Humphreys, wherein he recovered a verdict and judgment against them for $490 damages, and they appealed.

It appears, from the evidence, that in April, 1875, Washburn was the owner of a stock of goods in a store in Shirley, Illinois, which he was carrying on. Being indebted to Roush & Humphreys, in the sum of $1190, for goods previously sold by them to him, an arrangement was at that time made between them in respect to the goods, and the payment of the debt from the proceeds of their sale. An invoice then taken of the goods, amounted to $2145. As to the terms of the arrangement, the parties differ. Roush & Humphreys, and others, testify the agreement was that Washburn should give the former a bill of sale of the goods, and turn over the store to them, and they, Roush & Humphreys, were to place a man in charge and possession of the same; that this agent of theirs was to sell the goods and first pay off an execution for $400, which was then in the sheriff's hands, and a lien on the goods, and which Roush & Humphreys had assumed the payment of, and then to pay Roush & Humphreys their claim, and after it was paid, then the goods were to be turned back to Washburn; and that they (Roush & Humphrey) accordingly placed one Osborn in possession of the store, who proceeded in the selling of the goods.

Washburn's version, unsupported by any one else, is that he was himself to go on and sell the goods, and as fast as they were sold, the proceeds were to be turned over to Roush & Humphreys; that on the recommendation of Roush & Humphreys that Osborn, a man they had, could sell more goods than the one Washburn had, he put Osborn to work in the store. Washburn states further, " I learned that Osborn was claiming to hold the goods for Roush & Humphreys, and so when he went out I closed the door and locked it; when he came back, I refused to let him in."

Other testimony shows, that this was some eight weeks after Osborn had been in the possession. The next morning after this occurrence, Roush & Humphreys replevied the goods from Washburn, and they were delivered under the writ to that firm at Bloomington, their place of residence. They put part of the goods in an auction store next door to their own store, and had them sold there at auction; part they put into their own store and made sale of, realizing on the stock of goods $946.50, some $200 less than their account, and Washburn owing them, in addition, $400 on the execution assumed. On the 18th of August, 1875, while the replevin suit was pending, Washburn commenced this suit in trover for the alleged conversion of these goods in so making sale of them, the judgment therein being rendered March 31, 1876.

The pleas by Washburn in the replevin suit, and on which issues were joined, were, *non cepit, non detinet,* and property in himself, and that he was entitled to the possession.

The verdict of the jury in that suit was, " we, the jury, find the issues for the plaintiffs, and that they are entitled to the possession of the goods described in the declaration, and the defendant guilty of wrongfully detaining them." And judgment was rendered upon the verdict, December 2, 1875.

Mr. WILLIAM E. HUGHES, for the appellants.

Mr. B. D. LUCAS, and Messrs. ROWELL & HAMILTON, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Appellants insist that the judgment in the replevin suit was a bar to this action of trover; that it decided that appellee had no property in the goods. It at least established the claim set up by appellants, and determined that the right of possession of the goods was in them at the time of the commencement of the replevin suit. But appellee contends, that, consistently with that, there might have been and was a subsequent conversion of the goods by appellants, and claims

that it was agreed, in the arrangement which was made between himself and appellants in respect to the goods, that they should be sold at Shirley, in the usual course of trade, and that the selling of them at a different place, to-wit, at Bloomington, and part of them in a different manner, at auction, was a wrongful conversion of the property. It was undoubtedly contemplated by the parties that the goods would be sold in the store at Shirley, and there was probably nothing more than that in the way of any agreement as to the place or mode in which the goods should be sold.

It does not lie in the mouth of appellee to make complaint that the goods were not sold out in the store at Shirley, after shutting the agent of appellants out of the store, and refusing him admittance. Appellants had undertaken, and were proceeding with, the sale of the goods in the store at Shirley, and were prevented from going on further in so doing, by the act of the appellee. In execution of the writ of replevin, which appellants were obliged to resort to, to obtain possession of the goods, they were delivered to appellants at the place where they resided and did business, at Bloomington, and we think the sale of the goods there was warranted, under the conduct of appellee.

The goods were to be sold and converted into money to pay the debt to appellants, as both parties agree. The essential thing was, that the goods should be fairly sold, and the proceeds applied as agreed. This was done. The testimony shows, fully, that the goods were the odds and ends of an old stock, and were sold for all they were worth; that it was of no prejudice to appellee in selling a portion of them at auction; that no sacrifice was made on them, but that in the mode. in which they were so sold, they were made to bring, and did bring, their full value. We can not find that there was any wrongful conversion of the property. The verdict being manifestly against the evidence, the judgment is reversed and the cause remanded.

*Judgment reversed.*